Good morning, may it please the Court. My name is Hillary Hahn and I represent the petitioners in this case. Mr. Al Ramahi and Ms. Al Sharif entered the United States in the middle of 2007, about a month apart from each other. Both of them entered the United States on valid tourist visas and were admitted for a six-month period. And under the immigration regulations, maintenance of non-immigrant status is an extraordinary circumstance that excuses the failure to file an asylum application. And this Court has endorsed maintenance of non-immigrant status as an extraordinary circumstance in a number of cases, most notably in Walkery v. Holder. Now, in its decision, the Board assumed that there were extraordinary circumstances for the failure to file. But the Board found that they didn't file within a reasonable period of time, given those extraordinary circumstances. And the only reason the Board ultimately provided for this determination, that it wasn't a reasonable period of time, was a conclusion that although they had opportunities to file their asylum application, they, quote, always chose to delay further. Would you clarify what, in your view, is the standard of review on whether that was reasonable? Because there seems to be a potential tension in some of the cases as to whether it's substantial evidence or a de novo review as a mixed question of law and fact. Right. I think it's a substantial evidence standard. I think there's good reason, given that this is a question of law under Ramadan, to think that this should be a de novo standard. But in Ramadan itself, the Court uses the language, compels the conclusion. And I looked at a number of other cases subsequently, Vahora, Bhupinder Singh, Taslimi. And in all of those cases, the Court's used a substantial evidence standard. So I think that's appropriate in this case as well. I'd like it to be the de novo standard, but I don't think it is. And so the issue before the Court then, I think, is a pretty narrow one. That is, does substantial evidence support the Board's decision that, although the petitioners had opportunities to file their asylum application, they always chose to delay further? And we believe that there's no substantial evidence in the record to support that. And, in fact, when you look at the record, I think it compels the opposite conclusion. That is, that the petitioners were diligent in seeking out their legal options throughout the period of time after their nonimmigrant status lapsed, but at every point, they didn't choose to delay, but something that was out of their control significantly made it more difficult for them to either seek legal assistance or to actually physically file the asylum application. And the Board, I think it's notable in its decision, doesn't point out any particular point in time at which they had an opportunity to file but chose to delay. And they certainly don't point out multiple points in that timeline where they failed to do so. And, you know, so this began in December of 2007, when Mr. Alramahi was actually still in nonimmigrant status. He sought out the advice of an attorney, and the attorney there had a brief conversation. The attorney told him that asylum wasn't an option for people from Jordan. And even though he was somewhat discouraged by that, he continued to seek out his legal options. But your client didn't tell that lawyer, what was it, Mr. Klein, Barbara Klein? They didn't tell him of the problems, the threats they were having from his wife's family in Jordan. Right. That's true. And he testified that, you know, he was told that asylum wasn't an option, and that, you know, made him discouraged. I mean, and I think the question here is, you know. But just a couple months later, he sees a different lawyer, and she says, you might be eligible, you better file as soon as possible. That's in July 2008, so that's just five, six months later. Right. He's now then been in the country about a year at that point, and his attorney or the attorney says you should file as soon as possible. And then he doesn't file until April 2009. So the question is, that plus the interceding things that happened, why isn't that substantial evidence? Sure. You know, I think that you have to look at, I think, you know, the Department of Homeland Security in their asylum office training manual says, you know, the board and this court also say that you look at the totality of the circumstances. And when they did, you know, they sought three different legal opinions within that six-month period after their nonimmigrant status lapsed. And, you know, as you said, Judge McKeown, they found someone in July of 2008. Within two weeks, they hired that attorney and, you know, did everything that that attorney asked them to do. And at that point, really the delay was a result of two sort of different things. One, jurisdictional issues as to where the asylum application could be filed, and then later issues about immigration court procedures and policies. Did the attorney that they hired after they, I guess it was after they got the notice to appear but before it was filed, did the attorney advise them? Is there evidence in the record that the attorney advised them not to file their application? No. The record isn't clear as to exactly why it wasn't filed. But I think that, you know, in terms of reasonableness, I think it would be reasonable for an attorney in that situation to make the determination that it was sort of futile to file an affirmative asylum application. And can you talk about that a little bit, why that would be futile? And having filed it, wouldn't the agency then transfer it to the immigration judge? Or how does that work in practice? It doesn't happen too often in this particular situation in practice. But when the notice to appear hasn't been filed with the immigration court, the immigration court doesn't have jurisdiction and can't accept it. Things haven't started yet. Right. So you could, I mean, you could, you know, technically you could file the application with the asylum office. You know, there's no way that within two months the asylum office would interview the person and make a decision on the case, do the biometrics process, do everything that's necessary. So, yeah, I mean, I think. So what would happen if they filed with the asylum office, then the department commenced proceedings, filed the notice to appear with the court, then what would happen to that asylum application? Would it be transferred to the court proceeding? Yeah, I think it would be referred to the immigration court. It's usually cases, you know, as you know, are referred to the immigration court after a decision by the asylum office. So it's possible, I think, in a situation like this, the immigration judge might require a new application just because the asylum office hasn't taken actual action on the case. But one way or the other, yeah, it would make its way to the immigration court. Okay. So basically, as of the summer of 2008, they're in the hands of an attorney. Correct. They didn't really start with the attorney until after the notice of appear from the immigration officers visited them on July the 8th, 2008, right? Well, no, they consulted the attorney prior to that. Right, but they didn't hire them. They didn't hire them. They didn't have the money. But then after the immigration officials descended upon them, all of a sudden somehow they come up with the money. Well, you know, I think, you know, when you look at it in terms of reasonableness, they hired the attorney within two weeks of the time that they consulted with her, you know. And in the intervening time, the immigration authorities descended upon her. That's true. And it's not, you know, it's not entirely clear to what extent that, you know, Between, say, January of 2008 and July of 2008, did they not take steps? Well, you know, I think from their testimony, it was the fact that they'd already consulted an attorney who told them asylum wasn't an option. They'd made other attempts to seek legal representation. You know, they'd called everybody on this free legal services list and gotten no response. I guess my notes said they called two numbers. Right, and I think two numbers are all there are on the free legal services list. That's sad. The last time I looked, and actually I looked at it again last night, it's the Northwest Immigrant Rights Project in Seattle, the Northwest Immigrant Rights Project in Granger, and then one other attorney who's in San Diego. Okay. I mean, I guess the problem for me is that although what you're saying would be substantial evidence to support a determination that they did have reasonable delay perhaps, we have to be compelled by that, that they couldn't find that it wasn't reasonable. And based on this record, I'm having a little trouble with that. Yeah. I think really what it comes down to is what did the board say? The board said, and the only thing the board said really in its decision in terms of its legal conclusion or its analysis was they had opportunities to file and they always chose to delay further. So I think the question is, is that particular conclusion supported by substantial evidence? And really there's nothing in the record that suggests that they chose to delay at each of these points. You know, if the board had analyzed each one of these, you know, the timeline and gone through each of these things and said this is why we believe this isn't reasonable, I think it might be a different case. But given that this is all the board said in its analysis, and I think that makes us different, and I think that's the reason that substantial evidence doesn't support the board's decision. Do you want to save your time? I will. Thank you. May it please the Court. Jeffrey Lee, Superior, on behalf of the Attorney General. In this case, we've already discussed the factual circumstance of the case, and it's the government's position that the board's decision is proper in this case. The petitioners have not shown that the delay of almost 14 months in filing their application was actually reasonable. I think it's important to actually look that there's a presumptive reasonable period of about six months, that HUSIF says that if you file within six months, that there will be a presumption that that is reasonable. Here the petitioners didn't even start the procedure until after that six-month period had run. Now in that actual six-month intervening period, they argued that, oh, they were relying on the advice of Attorney Klein. But the problem with that is that within three or four weeks of them contacting Mr. Klein, they seek out other attorneys. They make those phone calls that were discussed. After that, that's in January, maybe early February. They do nothing else on their case until July when they meet with Ms. Thorpe. There's also the issue that to the extent that that's the only real issue in those six months, that there was no compliance plazada. And while they say that it's not an ineffective assistance of counsel claim, rather it goes to the reasonableness, I think there still has to be some kind of compliance with that, because otherwise we have no way of actually verifying if this is in fact reasonable to rely upon that, especially when the petitioners concede they didn't bring forth any of the evidence that they actually had been harmed, had received threats from the female petitioner's brothers. Could I ask you about the period after they were in proceedings, the notice to appear had been filed, and I think there was a suggestion in the briefs that they could have filed a motion to advance the master calendar hearing. Is that routinely done? Is that practical? I think ultimately their motion was granted and the master calendar hearing was advanced. In terms of how routine that is, I was actually unaware that this was at the time the Seattle Immigration Court's proceedings that you could not actually file until your first calendar hearing, so I don't know how routine that was. I mean, as you noted, they did file one. It was granted, so presumably had they filed earlier, it could have also been granted.  between when they were taken into custody, given the NTAs, and when that actually was filed with the Immigration Court, and I think that that would have put a spike in the reasonableness, that you could at least say, hey, we filed our application with DHS. They couldn't adjudicate it because we were in proceedings, but you at least put the pushpin in there saying we tried to file it on this date. I think that's kind of the theme of this is that there's not a lot of effort, Your Honor. The board points out they could have taken steps and they didn't, and in this case there is nothing in that six-month presumptive period after they make those three phone calls, they don't do anything. They don't contact DHS, even though the mail petition testifies in retrospect that they would have actually ephemerally gone to DHS. They don't continue to try the free legal service providers. I think that if you actually look what happens in July when they go to this attorney, is they get a consultation, which from all evidence was at least affordable, even if they couldn't afford the actual hiring of the attorney. They got the consultation at which they were told, you have a case for asylum. You can argue change conditions. You need to file this as soon as possible. Presumably they could have, had they taken the initiative, contacted another attorney, gotten a consultation. Even if they could not have hired that attorney, they would have had the information and could have proceeded pro se. I mean, we get pro se applications from asylum applicants all the time. They're not always very good, but you can at least put in the effort to actually say we're trying to do this. And I think that's what the cases have shown, that have actually shown where you go beyond the six-month period. In Wakari, it was the issue of whether or not gathering documents for your claim would be reasonable. They remanded to see if that was the case. In Taslimi, it was over the seven-month period, she was struggling with her religious conversion. So it wasn't simply that she was doing nothing during that period. There was a reasonableness of that period. Would you remind me on the six-month presumption? I thought that was tied to something. I'm just trying to find that now. It's a presumption of six months from the end of your exceptional circumstance. So in this case, from the moment that their temporary status ended, there's then the presumption. Jose has found that, you know, if you do it within six months, the Board has also kind of noted that under the, I forget what the actual term of it is, but under the Federal Register, they've kind of said six months and earlier, that's okay. If it's over six months, there's a presumption that it's unreasonable. So the preamble that we cited in saying clearly waiting six months or longer after expiration or termination of status would not be considered reasonable. Right. Right. And, I mean, there have been cases where the court's gone beyond that, but there's been some kind of evidence of actually working on your application during that period. In this case, they didn't even begin the process. They didn't actually even start working on their application themselves until September of 2008. So by that time, it's been roughly eight, nine months between when they actually ran out of status and when they actually even could potentially have filed had they been completed at that time. If there are no further questions. Thank you. If I could just briefly address one point. It's true that the court and the Board have both said that there's a presumptive six-month deadline, but I think the takeaway from the Board's decisions and this Court's decisions on this is that really what it is, it's a totality of the circumstances standard. The Board said even if it's fewer than six months, you still have to look at the totality of the circumstances. And that's why both the Board and this Court have found that delays of more than six months under sort of mundane circumstances were reasonable. The Tazlimi case where the petitioner was trying to determine whether her religious conversion was permanent, and then Matter of YC, the Board's case in which the applicant was released from immigration custody, five months later tried to file an asylum application with an immigration judge, it was rejected and then waited six more months to file the application. The Board found that that 11-month delay was a reasonable period. So I think you have to look at the totality of the circumstances. And in this particular case, there wasn't a choice on behalf of the petitioners to delay the filing of the application. Thank you. Thank you. Thank you both for your argument this morning. Al-Rahmani and Al-Sharif v. Holder are submitted. The next case for argument this morning is Thomas and Nozilic v. Thomas.
judges: Gilman, McKeown, Ikuta